[No. 15579.  In Bank.—March 29, 1894.]

## W. H. WEBSTER, PETITIONER, v. A. W. HANNA, JUSTICE OF THE PEACE, ETC., RESPONDENT.

JUSTICE'S COURT—APPEAL—PAYMENT OF COSTS—COSTS OF RESPONDENT.—A party appealing from a justice's court must pay all fees of the justice, including those on the trial incurred by the respondent as well as by the appellant, and those on appeal, before the justice can be compelled to forward the papers to the clerk of the superior court.

APPLICATION to the Supreme Court for a writ of mandate.

The facts are stated in the opinion of the court.

*Ford & Burnell,* for Petitioner.

*A. W. Hanna, in pro. per.,* and *J. H. G. Weaver,* for Respondent.

GAROUTTE, J.—This is an original application for a writ of mandate to compel a justice of the peace to send to the superior court the papers on appeal in a civil action which had theretofore been tried before said justice and judgment rendered. The appellant paid the fees of the justice upon the appeal, and also his own costs incurred at the trial of the action, but refused to pay to the justice the costs of the respondent incurred at the trial, and for that reason the justice declined to forward the papers to the clerk of the superior court. If the justice is entitled to receive from the appellant the costs incurred by the respondent at the trial before it becomes his duty to forward the papers to the appellate court, then this application must be denied. An act of the legislature (Stats. 1877–78, p. 134) declares what fees justices of the peace are entitled to charge, and following such declaration in the same act this language occurs: "All fees of justices of the peace, including those on trial and those on appeal, must be paid before the justice shall be compelled to forward any papers on appeal." This language is very broad, and

covers the entire subject. It certainly refers to all fees to which the justice is entitled under the law, whether those fees be incurred by appellant or respondent. (See *Bray* v. *Redman*, 6 Cal. 287.) As to the policy of a law requiring the appellant to pay to the justice all fees incurred by respondent before he is entitled to have the papers transferred to the superior court, we are not called upon to discuss it.

This provision of the statute is not in conflict with any section of the Code of Civil Procedure, and is entirely in line with that portion of section 977 bearing upon the fees of justices of the peace. It not being in conflict with any subsequent provision of the code or statutes, there can be no repeal by implication. While to some extent it may be inconsistent with other provisions of the code, yet inconsistency in statutes does not make this court a forum for the exercise of legislative functions, in amending or repealing plain provisions of the law.

The application is denied, and the proceedings dismissed.

PATERSON, J., MCFARLAND, J., and FITZGERALD, J., concurred.

BEATTY, C. J., dissenting.—I dissent. The allegations of the petition, confessed by the demurrer, are in effect that, in an action commenced in respondent's court by Charles and Emily Foster, judgment was given in their favor and against the petitioner for the return of certain chattels, and for damages, and for fifty-two dollars and sixty cents, costs of suit. That petitioner, being dissatisfied with the judgment, took and regularly perfected an appeal to the superior court, and in due time paid to the respondent all of his fees as justice of the peace and all other costs incurred by the petitioner on the trial of said cause and for making out and transmitting the appeal papers. That the respondent nevertheless refused for more than five days thereafter

petitioner's demand that he should transmit said papers. Section 977 of the Code of Civil Procedure reads as follows: " Upon receiving the notice of appeal, and on payment of the fees of the justice or judge, and filing an undertaking as required in the next section, and after settlement or adoption of statement, if any, the justice or judge must, within five days, transmit to the clerk of the superior court, if the appeal be on questions of law alone, a certified copy of his docket, the statement as admitted or as settled, the notice of appeal, and the undertaking filed; or, if the appeal be on questions of fact, or both law and fact, a certified copy of his docket, the pleadings, all notices, motions, and other papers filed in the cause, the notice of appeal, and the undertaking filed; and the justice or judge may be compelled by the superior court, by an order entered upon motion, to transmit such papers, and may be fined for neglect or refusal to transmit the same.   A certified copy of such order may be served on the justice or judge by the party or his attorney.   In the superior court either party may have the benefit of all legal objections made in the justice's court."

If within the meaning of this section the fees of the respondent had been paid at the time transmission of said papers was demanded, there can be no doubt that it was his duty—specially enjoined by law—to transmit them to the county clerk within five days thereafter, and no question is made that *mandamus* will lie to compel him.

But the contention, and the whole contention, of respondent is that his fees had not been paid according to the requirements of the section quoted, because, although the petitioner had paid all his own costs and all fees of the justice chargeable to him, he had not paid the costs incurred by, and the fees chargeable to, the Fosters—the plaintiffs in the action—and he justifies his refusal upon the ground that the law has annexed to the right of appeal from the judgment of a justice of the peace the condition that the party appealing shall

not only pay his own costs but the costs of his adversary also.

This is by no means an obvious construction of section 977 standing alone, and it is in direct conflict with other provisions of the code in *pari materia*, at least it is a construction which renders such provisions meaningless and absurd. For instance, by section 896 the costs of the prevailing party must be taxed and included in the judgment, and by section 978 the party appealing, in order to get a stay of proceedings, must file an undertaking with sureties in twice the amount of the judgment, including costs, conditioned for the payment of such, etc. By section 974 thirty days are allowed within which to take an appeal, and by sections 891 and 892 the judgment is required to be entered at once upon the rendition of a verdict in case of a jury trial, and when the trial is by the court it must be entered at the close of the trial. These provisions all imply that the prevailing party has paid his costs and got a judgment for them before the appeal is taken, and, necessarily, before the party appealing is called upon to pay the fees and costs, payment of which is made a condition precedent to the right to demand a transmission of the papers. Taking these several provisions of the statute together, their obvious construction imposes upon the party appealing the payment of no costs but his own. And this construction is also in favor of justice, as the opposite construction is productive of the rankest injustice. For why should the losing party be compelled to pay the costs of the prevailing party as a condition of exercising his right of appeal, and, especially, when the prevailing party has a judgment for such costs, secured by an ample undertaking, and the losing party has no security for their repayment in case he is finally successful in the litigation? As a question of justice between the parties the matter is too plain for discussion.

But we are cited to two cases decided in this court, one in 1855 and the other in 1856, which, it is contended, give to a corresponding section of the old prac-

tice act (sec. 627) the construction claimed by respondent for section 967 of the Code of Civil Procedure. In the first of these cases (*McDermott* v. *Douglass*, 5 Cal. 89), it clearly appears from the report that the appealing party had failed to pay or tender *any* fees for filing the appeal bond or *any fees whatever*, and, of course, the *mandamus* was properly refused on that ground. The whole opinion of the court is embraced in two lines, and consists of a misquotation of the statute; that is to say, it quotes the language of section 627, as amended in 1853. (Stats. 1853, p. 280.) But this had been changed by the amendment of 1854. (Stats. 1854, p. 70.)

The case before the court was, however, correctly decided under the statute as amended, and as it has been incorporated into section 977 of the code, for, as above stated, the appealing party had failed to pay his own costs, including the fee for filing the undertaking on appeal.

In the second case (*Bray* v. *Redman*, 6 Cal. 287), the point under consideration was not involved, but the court incidentally refers to and approves the decision in *McDermott* v. *Douglass*, 5 Cal. 89, the correctness of. which is not questioned.

No case, however, is cited in which this court has held or intimated that the legislature of California has ever deliberately sanctioned such practices as the statute construed as respondent construes it would warrant. If the law really meant that a justice of the peace, who has chosen to give credit for his fees to one of the parties to an action before him, may, by deciding the cause in his favor, compel the other party to pay a debt, not his own, as a condition of exercising his right of appeal, it is easy to see what scandalous abuses might result. For under such a law the justices of the peace would have a pecuniary interest to be affected favorably or unfavorably by their own decisions, and whether they were or were not in fact biased, they could never escape the suspicion of bias when their decisions happened to coincide with their interest. This would be

an evil of sufficient magnitude if this were all. But if a justice of the peace, whose fees are his only compensation, could increase his official emoluments by encouraging the prosecution of baseless and vexatious suits against responsible defendants by giving credit to impecunious plaintiffs, the bias which would always be suspected in such cases would sometimes exist, and the defendant would be compelled, as the price of an appeal to an impartial tribunal, to pay not only his own costs, but the costs and charges incurred by the plaintiff in vexatiously pursuing him, and that without any security for their repayment upon a final decision in his favor. This view might be further pressed, and even more strongly illustrated, but enough has been said to show how reluctant any court should be to sustain a construction of the statute so widely at variance with justice and propriety; and, even if the previous decisions of the court had been in favor of such construction, we should feel no hesitation in overruling them, if the terms of the statute would justify us in so doing. But, as we have shown, the cases cited only involved the question whether the appealing party was required to pay his own costs, and consequently it could not have been decided that he was required to pay costs of his adversary.

Coming, then, to the statutes themselves, and construing them, as we may, without reference to decisions which do not touch the point in controversy here, we think it has been made sufficiently clear that the provisions of the Code of Civil Procedure not only do not require the construction claimed by respondent, but are plainly inconsistent with it.

There is, however, another statute, approved March 1, 1878, relating to the fees of justices, which contains the provision: " All fees of justices of the peace, including those on trial and those on appeal, must be paid before the justice shall be compelled to foward any papers on appeal."

In order to determine the proper effect of this provi-

sion of the fee bill, it may be necessary to take in consideration the date of its enactment as compared to the existing provisions of the Code of Civil Procedure relating to the same matter; for, if they are inconsistent, the later statute will prevail—operating a repeal by implication of the earlier.

We are not prepared to say when the clause above quoted first found its way into the fee bill, but it dates at least as far back as the act of April 4, 1870, which was amended in other particulars by the act of March 1, 1878. Afterwards—in 1873—the Code of Civil Procedure was adopted. Then in 1878, as we have seen, this provision of the act of 1870 was re-enacted in amending the section in which it occurs, in some other particulars. Then on March 26, 1880 (Stats., p. 54), sections 977, et seq., of the Code of Civil Procedure were re-enacted, so that on the theory that the two statutes are so inconsistent that the later will repeal the earlier by implication, the provisions of the code must prevail. On the other hand, if the two statutes are to be construed as statutes in *pari materia* ought to be construed, so as to harmonize all their provisions as far as can be done, the same result would follow. For the two laws can be harmonized, and they can be harmonized only by limiting the application of the clause quoted from the fee bill to fees and costs incurred by the appealing party, fees, in other words, which he owes to the exclusion of fees and costs which in legal contemplation have been paid by the other party, and included in his judgment. If it be said that this construction disregards the letter of the law, it may be truly answered that any other construction disregards its substance, and, what is worse, disregards the plainest dictates of justice and propriety.

For these reasons, I think a peremptory writ of mandate should issue as prayed.

DE HAVEN, J., concurred.